IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Edward W. Nottingham**

Civil Action No. 06–cv–02274–EWN–MJW

CATHRYN SCHIOPPI,

    Plaintiff,

v.

COSTCO WHOLESALE CORPORATION,
a/k/a COSTCO WHOLESALE,
a/k/a COSTCO,

    Defendant.

**ORDER AND MEMORANDUM OF DECISION**

This is an employment discrimination case. Plaintiff Cathryn Schioppi asserts a broad variety of state and federal claims against Defendant Costco Wholesale Corporation. This matter is before the court on "Defendant's Motion to Dismiss Certain Claims for Relief," filed on November 17, 2006. Jurisdiction is premised upon 28 U.S.C. §§ 1331, 1367 (2006).

**FACTS**

*1.   Factual Background*

The following factual allegations are taken from Plaintiff's complaint and are accepted as true for the sole purpose of this motion. Plaintiff was employed by Defendant from July 1996 through her termination on February 13, 2006. (Complaint and Jury Demand ¶ 5 [filed as Exhibit A to Notice of Removal on Nov. 11, 2006] [hereinafter "Compl."].) At the time of her

termination, Plaintiff was a merchandising manager at Defendant's store in Superior, Colorado. (*Id.* ¶ 7.) Prior to the incident that lead to her termination, Plaintiff had no history of disciplinary problems. (*Id.*)

In early February 2006, Plaintiff was in the process of conducting work evaluations for two of her subordinates, Melissa Nicastro and Lori Edwards. (*Id.* ¶ 10.) Both women were aware of and unhappy with their pending appraisals. (*Id.*) On February 2, 2006, Plaintiff purchased a pregnancy test for sale at the store in which she worked. (*Id.* ¶ 12.) Some days after Plaintiff made this purchase, Nicastro filed a complaint with the store's general manager, Kathy Gonzales, asserting that Plaintiff had stolen and used a pregnancy test for sale at Defendant's store. (*Id.* ¶ 9.) Nicastro asserted that Edwards had helped misappropriate the test. (*Id.*) Nicastro never came forward with any evidence supporting her accusations. (*Id.*)

When Gonzales first heard the allegations, she commented that they looked like a "set-up." (*Id.* ¶ 11.) Nevertheless, Plaintiff was suspended from her employment on February 7, 2006. (*Id.* ¶ 8.) Plaintiff was placed on suspension pending an investigation, but no such investigation took place. (*Id.* ¶ 14.) No disciplinary action was instituted against Edwards. (*Id.* ¶ 20.)

On February 9, 2006, Plaintiff contacted regional manager Ron Vachris after learning from Gonzales that her "suspension was supposedly related to an investigation and [a] confession by [Plaintiff]." (*Id.* ¶ 15.) Plaintiff asserted that the accusations against her were false, she had not confessed, and no investigation had taken place. (*Id.*) Vachris agreed to look into the situation, but did not do so. (*Id.*) According to the employee agreement effective at the time of her

termination, Plaintiff had the right to have Defendant's human resources department address the situation, but neither the department nor anyone outside of the Superior store ever investigated the matter. (*Id.* ¶ 16.)

Gonzales and Nicastro had been close friends for fifteen years. (*Id.* ¶ 13.) Plaintiff asserts that prior to Nicastro's allegations, Plaintiff had seen drug paraphernalia in Gonzales's car. (*Id.* ¶ 17.) Plaintiff fails to indicate whether she shared this information with anyone employed by Defendant.

Plaintiff was the only female manager working under Tyler Gunn. (*Id.* ¶ 18.) Plaintiff neglects to furnish Gunn's job title or function. On an unknown date, Gunn had indicated his preference for an all-male supervisory team. (*Id.*) Six months before Plaintiff's termination, Gunn indicated that George Boyd, who is male and much younger than Plaintiff, should have Plaintiff's job. (*Id.*) Plaintiff subsequently refused a transfer or reassignment that would have allowed Boyd to move into her job. (*Id.* ¶ 19.) After Plaintiff was terminated, Boyd was selected as her replacement. (*Id.* ¶ 22.)

### *2.     Procedural History*

On October 23, 2006, Plaintiff filed her complaint in the state district court in Boulder County, Colorado. (*Id.*) On November 11, 2006, Defendant removed the action to this court. (Notice of Removal [filed Nov. 11, 2006].) On November 17, 2006, Defendant filed its answer. (Answer [filed Nov. 17, 2006].) On the same day, Defendant also filed a motion to dismiss. (Mem. Br. in Supp. of Def.'s Mot. to Dismiss [filed Nov. 17, 2006] [hereinafter "Def.'s Br."].) Defendant argues that: (1) this court lacks jurisdiction over Plaintiff's claims under the Age

Discrimination in Employment Act ("ADEA") and the Pregnancy Discrimination Act of 1968; and (2) Plaintiff has failed to state a claim with respect to her claims for intentional infliction of emotional distress, wrongful discharge against public policy, discharge for engaging in lawful activities outside of work, and breach of duty of good faith and fair dealing. (*Id.*) On December 7, 2006, Plaintiff responded, consenting to the dismissal with prejudice of all of the claims addressed in Defendant's motion except: (1) her claim for intentional infliction of emotional distress; and (2) her ADEA claim, which she asserts should be dismissed without prejudice. (Resp. to Def.'s Mot. to Dismiss Certain Claims for Relief [filed Dec. 7, 2006] [hereinafter "Pl.'s Resp."].) On December 22, 2006, Defendant filed its reply. (Reply Mem. in Supp. of Costco's Mot. to Dismiss [filed Dec. 22, 2006] [hereinafter "Def.'s Reply"].) This matter is fully briefed.

## ANALYSIS

### *1.  Legal Standard*

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6) (2006). For the purposes of a Rule 12(b)(6) motion, a court should only dismiss the claim "when it appears that the plaintiff can prove no set of facts in support of the claims that would entitle him to relief, accepting the well-pleaded allegations of the complaint as true and construing them in the light most favorable to the plaintiff." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (quoting *Yoder v. Honeywell, Inc.*, 104 F.3d 1215, 1224 [10th Cir. 1997]). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to

state a claim for which relief may be granted." *Id.* (quoting *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 [10th Cir. 1999]).

## *2. Evaluation of Claims*

### *a.     ADEA Claim*

Plaintiff consents to dismissal of her ADEA claim, but requests dismissal without prejudice. (Pl.'s Resp. at 2.)  Defendant points out that dismissal without prejudice would be meaningless: Plaintiff's initial EEOC charge neglected to allege age discrimination, so Plaintiff's claims are time-barred because more than 300 days have passed since Plaintiff was terminated. (Def.'s Reply at 7.)  Regardless, I must dismiss the claim for lack of subject-matter jurisdiction.

"Exhaustion of administrative remedies is a 'jurisdictional prerequisite' to suit under Title VII" and the ADEA.  *Jones v. Runyon*, 91 F.3d 1398, 1399 (10th Cir. 1996); *see Shikles v. Sprint/United Mgmt. Co.*, 426 F.3d 1304, 1309 (10th Cir. 2005) (emphasizing that the charge filing requirements of Title VII and the ADEA are similar and should be construed consistently). To achieve exhaustion, a claimant must file a charge with the EEOC.  *Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999).

Plaintiff's charge of discrimination alleged only gender discrimination under Title VII of the Civil Rights Act of 1964.  (Def.'s Br., Ex. A [EEOC Charge].)  Accordingly, this court lacks subject-matter jurisdiction over Plaintiff's unexhausted ADEA claim.

### *b.     Intentional Infliction of Emotional Distress*

Count five of Plaintiff's complaint alleges that Defendant "by extreme and outrageous conduct, intentionally or recklessly caused severe emotional distress to [Plaintiff], including

without limitation by accusing her of theft, by representing that she had admitted to theft, by ignoring her disagreement with same and ignoring her proof that she had not, in fact, committed theft." (Compl. ¶ 41.) Defendant asserts that Plaintiff's allegations fail to rise to the level of outrageous conduct required under Colorado law. (Def.'s Br. at 6.) I agree with Defendant.

To state a claim for intentional infliction of emotional distress, Plaintiff must allege: (1) Defendant engaged in extreme and outrageous conduct; (2) Defendant engaged in such conduct recklessly or with the intent of causing Plaintiff severe emotional distress; and (3) Defendant's conduct caused Plaintiff to suffer severe emotional distress. *English v. Griffith*, 99 P.3d 90, 93 (Colo. Ct. App. 2004) (citing *Culpepper v. Pearl St. Bldg., Inc.*, 877 P.2d 877, 882 [Colo. 1994]). "[T]he level of outrageousness required for conduct to create liability for intentional infliction of emotional distress is extremely high." *Coors Brewing Co. v. Floyd*, 978 P.2d 663, 666 (Colo. 1999) (citing RESTATEMENT [SECOND] OF TORTS 46 [1965]). "Although the question whether conduct is outrageous is generally one of fact to be determined by a jury, the trial court is initially responsible for determining whether reasonable persons could differ on the question." *English*, 99 P.3d at 93 (citing *Culpepper*, 877 P.2d at 882).

I find the Colorado Supreme Court's opinion in *Floyd* to be instructive. In *Floyd*, the plaintiff, a discharged employee, alleged that his former employer: (1) instructed him to conduct an illegal undercover narcotics investigation, which the employer funded with laundered money; (2) was subsequently advised by counsel to "bury" evidence of the illegal activity; and (3) fired the plaintiff in an attempt to pin sole responsibility for the illegal conduct on him, while also accusing him of "improprieties with a female employee." 978 P.2d at 664–65. The court determined, as a

matter of law, that the employer's conduct toward the plaintiff was not "'so extreme in degree[] as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Id.* at 666 (citing *Rugg v. McCarty*, 476 P.2d 753, 756 [Colo. 1970]).

Plaintiff in the instant case essentially alleges she was fired based on false allegations of theft in order for one supervisor to protect her friend and another supervisor to establish an unlawfully comprised all-male supervisory staff. (*See* Compl.) While such conduct is hardly becoming, this court finds that it is commensurate in degree to the *Floyd* plaintiff's allegations. *See Floyd*, 978 P.2d at 666. Furthermore, it has been held that discharge coupled with alleged defamatory remarks do not support a claim of intentional infliction of emotional distress. *Steinberg v. Thomas*, 659 F. Supp. 789, 795 (D. Colo. 1986). Nor does an employer's failure to follow its own personnel policies suffice to state a claim for outrageous conduct. *See Churchey v. Adolph Coors Co.*, 759 P.2d 1336, 1350 (Colo. 1988) ("[The plaintiff's] assertion that [the defendant] fail[ed] to follow its own personnel policies amounted to outrageous conduct confuses breach of contract with outrageous conduct."). I find that the facts Plaintiff alleges are not, as a matter of law, "'so extreme in degree[] as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Floyd*, 978 P.2d at 666. Consequently, I must dismiss Plaintiff's emotional distress claim.

### *3.  Conclusion*

Based on the foregoing it is therefore ORDERED that:

1. DEFENDANT's motion to dismiss (# 5) is GRANTED.

2. Plaintiff's Fifth, Sixth, Eighth, Tenth, and Eleventh claims are hereby dismissed with prejudice.

3. Plaintiff's Ninth claim is dismissed for lack of subject-matter jurisdiction.

Dated this 7th day of March, 2007

BY THE COURT:

s/ Edward W. Nottingham
EDWARD W. NOTTINGHAM
United States District Judge