IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Edward W. Nottingham**

Civil Action No. 06–cv–02274–EWN–MJW

CATHRYN SCHIOPPI,

      Plaintiff,

v.

COSTCO WHOLESALE CORPORATION,
a/k/a COSTCO WHOLESALE,
a/k/a COSTCO,

      Defendant.

---

## <u>AMENDED</u> ORDER AND MEMORANDUM OF DECISION

      This is an employment discrimination case. Plaintiff Cathryn Schioppi asserts a variety of state and federal claims against Defendant Costco Wholesale Corporation. This matter is before the court on "Costco Wholesale Corporation's Motion for Summary Judgment," filed July 13, 2007. Jurisdiction is premised upon 28 U.S.C. §§ 1331, 1332 (2006).

## FACTS

### *1.  Factual Background*

      Plaintiff was hired by Defendant in 1996. (Costco Wholesale Corp.'s Mem. in Supp. of its Mot. for Summ. J. [hereinafter "Def.'s Br."], Statement of Material Facts [hereinafter "SOF"] ¶ 1 [filed July 13, 2007]; *admitted at* Resp. to Def.'s Mot. for Summ. J. [hereinafter "Pl.'s Resp."], Resp. to Statement of Material Facts [hereinafter "Resp. to SOF"] ¶ 1 [filed Aug. 6, 2007].)  In

2003, Plaintiff worked at Defendant's store in Superior, Colorado. (*Id.*, SOF ¶ 7; *admitted at* Pl.'s Resp., Resp. to SOF ¶ 7.) That year, the Superior store's Warehouse Manager, Kathy Gonzales, promoted Plaintiff to the senior staff position of Front-End Manager. (*Id.*) Subsequently, Plaintiff was rotated into the position of Merchandise Manager, another senior staff position. (*Id.*) In her capacity as Merchandise Manager, Plaintiff reported to Assistant Manager Tyler Gunn. (*Id.*, SOF ¶ 13; *admitted at* Pl.'s Resp., Resp. to SOF ¶ 13.) Karen Sokol was Ms. Gonzales' other Assistant Manager. (*Id.*, SOF ¶ 14; *admitted at* Pl.'s Resp., Resp. to SOF ¶ 14.) Ms. Gonzales reported to Ron Vachris, Defendant's Vice President of Operations. (*Id.*, SOF ¶ 16; *admitted at* Pl.'s Resp., Resp. to SOF ¶ 16.)

On February 3, 2006, Ms. Gonzales learned that two employees under Plaintiff's supervision, Melissa Nicastro and Lori Edwards, had accused Plaintiff of taking a pregnancy test from store inventory and using the test without first paying for it. (*Id.*, Ex. D1 at 96 [Pl. Dep.], Ex. D2 at 155–56 [Gonzales Dep.], Ex. D7 at 53 [Edwards Dep.], Ex. 8 [Nicastro Statement], Ex. 9 [Edwards Statement].)[1] In Defendant's corporate parlance, the removal and use of store inventory without payment is called "grazing." (Pl.'s Resp., Resp. to SOF ¶ 26; *admitted in relevant part at* Costco Wholesale Corp.'s Reply Mem. in Supp. of its Mot. for Summ. J. [hereinafter "Def.'s Reply"], Reply Concerning Undisputed Facts ¶ 33 [filed Aug. 6, 2007].)

---

[1]Much to my consternation, both parties have brazenly disregarded Local Rule 56.1. *See* D.C.COLO.LCivR 56.1 (2007) (requiring exhibits to be individually numbered and submitted). Defendant did not number its voluminous, unedited deposition transcripts, so I cite to them in the order in which they appear on the docket as "Exhibit D1," "Exhibit D2," and so on. Plaintiff merely filed one voluminous exhibit, comprised of hundreds of pages of deposition exhibits, which chiefly duplicate Defendant's exhibits. I admonish the parties for their laxity.

Grazing is grounds for immediate termination.  (Def.'s Br., SOF ¶ 27; *admitted in relevant part at*

Pl.'s Resp., Resp. to SOF ¶ 27.)

In deposition, Plaintiff explained the subsequent sequence of events:

Q:     Just to recap here for a moment, your testimony is that Melissa Nicastro
       and Lori Edwards made up a story about your having grazed . . . a
       pregnancy test, correct?
A:     Yes.
Q:     And they reported that to upper management in the warehouse, Karen
       Sokol, Tyler Gunn, and Kathy Gonzales, and they all believed Melissa and
       Lori's story; is that correct?
*       *       *
A:     Ultimately, they — ultimately the ultimate end factor of it, yes, they
       believed it.
Q:     And from what you've told me Ron Vachris told you on the phone, he said
       he believed the statements of his three managers . . . Kathy Gonzales, Tyler
       Gunn, and Karen Sokol, that you had admitted this; is this correct?
A:     Yes.
Q:     And would you agree that based on Ron Vachris'[] believing Karen and
       Tyler and Kathy . . . that for that reason, he approved your termination?
A:     I believe that, yes.

(*Id.*, Ex. D1 at 122–24 [Pl. Dep.].)

### a.      *Allegations of Discrimination*

Plaintiff asserts that on one occasion, Mr. Gunn told her he would prefer to have a male

coworker, George Boyd, in the role of Merchandise Manager.  (*Id.*, SOF ¶ 168; *admitted at* Pl.'s

Resp., Resp. to SOF ¶ 168.)  At the time Mr. Gunn made this comment, Plaintiff perceived it to

be "somewhat" discriminatory.  (*Id.*, Ex. D1 at 65–66 [Pl. Dep.].)  Plaintiff admits that the only

purportedly discriminatory comment Mr. Gunn ever made to her was this single comment.  (*Id.*,

Ex. D1 at 130 [Pl. Dep.].)  Despite Plaintiff's awareness that Defendant's policies required her to

report discriminatory comments, Plaintiff cannot recall if she told either Ms. Sokol or Ms. Gonzales about the comment. (*Id.*, Ex. D1 at 66–67 [Pl. Dep.].)

Plaintiff further asserts that "[she] feel[s] that [she] was terminated to be replaced by a male," Mr. Boyd. (*Id.*, Ex. D1 at 50 [Pl. Dep.].) Thus, Plaintiff alleges that Mr. Gunn lied when he said Plaintiff confessed to grazing in the presence of Ms. Sokol, Ms. Gonzales, and himself. (*Id.*, SOF ¶ 172; *admitted in relevant part at* Pl.'s Resp., Resp. to SOF ¶ 172.) Plaintiff further alleges that Mses. Sokol and Gonzales also lied in saying that Plaintiff confessed to them. (*Id.*, Ex. D1 at 53–54, 74 [Pl. Dep.].) Plaintiff believes that her superiors' lies are part of a "conspiracy to get rid of [her]" and replace her with Mr. Boyd because Plaintiff is a woman. (*Id.*, Ex. D1 at 72–74 [Pl. Dep.].) Thus, Plaintiff asserts she was wrongly "fired based on an uncorroborated 'he/said' [sic] dispute." (Pl.'s Resp., Statement of Additional Disputed Material Facts [hereinafter "Add'l SOF"] ¶ 33; *denied at* Def.'s Reply, Resp. Concerning Disputed Facts [hereinafter "Resp. to Add'l SOF"] ¶ 33.)

Plaintiff claims that Mr. Boyd, who ultimately replaced her, was guilty of grazing merchandise. (*Id.*, Add'l SOF ¶ 6; *denied* at Def.'s Reply, Resp. to Add'l SOF ¶ 6.) Thus, Plaintiff believes that the discipline she received was more severe than that meted out to Mr. Boyd. (*Id.*, Add'l SOF ¶ 10; *denied at* Def.'s Reply, Resp. to Add'l SOF ¶ 10.)

### b. Contract-Based Allegations

Plaintiff asserts that her contract and promissory estoppel claims are premised upon Defendant's "Employee Agreement." (Def.'s Br., SOF ¶ 157; *admitted at* Pl.'s Resp., Resp. to SOF ¶ 157.) In deposition, Plaintiff complained that Ms. Gonzales' investigation was "unfair," in

apparent violation of the Employee Agreement. (*Id.*, SOF ¶ 159; *admitted at* Pl.'s Resp., Resp. to SOF ¶ 159.) Although Plaintiff complains that she was not "provided the opportunity [to write a statement] when [she] thought the opportunity should have been [given]," Plaintiff admits that when she was asked to provide such a statement prior to her termination, she refused because she had already decided to sue Defendant and, thus, had retained counsel. (*Id.*, Ex. D1 at 107–09, 227–28 [Pl. Dep.], Ex. 20 [2/9/07 Fax from Pl. to Mr. Vachris].)

### c. Defamation Allegations

Plaintiff feels her termination for grazing was an attack on her character. (*Id.*, SOF ¶ 197; *admitted at* Pl.'s Resp., Resp. to SOF ¶ 197.) Plaintiff believes that: (1) Ms. Edwards may have spoken to Defendant's Optical Manager, Kathy Kroll, in January 2007; and (2) this conversation constituted defamation. (*Id.*, SOF ¶ 198; *admitted at* Pl.'s Resp., Resp. to SOF ¶ 198; *see id.*, Ex. D1 at 201 [Pl. Dep.].) Plaintiff admits that she is unaware whether: (1) Defendant's management discussed her termination with anyone else; or (2) Defendant ever told a potential employer about the reason for her termination. (*Id.*, Ex. D1 at 201–02, 204–05 [Pl. Dep.].)

## 2. Procedural History

On October 23, 2006, Plaintiff filed her complaint in the state district court in Boulder County, Colorado, alleging claims for: (1) breach of contract; (2) breach of implied contract; (3) promissory estoppel; (4) defamation; (5) intentional infliction of emotional distress; (6) breach of the implied covenant of good faith and fair dealing; (7) discharge for engaging in lawful activities outside of work (*i.e.*, sexual intercourse); (8) wrongful discharge against public policy; (9) violation of Title VII of the Civil Rights Act of 1964 ("Title VII"); (10) violation of the

Pregnancy Discrimination Act of 1968; and (11) violation of the Age Discrimination in Employment Act. (Notice of Removal, Ex. A [Compl.] [filed Nov. 11, 2006] [hereinafter "Notice of Removal"].) On November 11, 2006, Defendant removed the action to this court. (*Id.*) On November 17, 2006, Defendant filed its answer. (Answer [filed Nov. 17, 2006].)

On the same day, Defendant also filed a motion to dismiss six of Plaintiff's eleven claims. (Mem. Br. in Supp. of Def.'s Mot. to Dismiss [filed Nov. 17, 2006].) On March 7, 2007, this court granted Defendant's motion, dismissing Plaintiff's claims for: (1) intentional infliction of emotional distress; (2) breach of the implied covenant of good faith and fair dealing; (3) discharge for engaging in lawful activities outside of work; (4) wrongful discharge against public policy; (5) pregnancy discrimination; and (6) age discrimination. (Order [filed Nov. 13, 2006].)

On July 13, 2007, Defendant filed its motion for summary judgment, arguing that no issue of fact remains on Plaintiff's surviving causes of action — *i.e.*, gender discrimination, breach of contract, breach of implied contract, promissory estoppel, and defamation. (Def.'s Br.) On August 6, 2007, Plaintiff filed a response brief. (Pl.'s Resp.) On August 21, 2007, Defendant filed its reply brief. (Def.'s Reply.) This matter is fully briefed.[2]

---

[2]On August 21, 2007, Defendant filed a motion to strike an exhibit to Plaintiff's response, asserting that the expert opinions contained therein constitute "speculation and conjecture." (Costco Wholesale Corp.'s Mem. in Supp. of its Mot. to Strike the Expert Report and Test. of Eugene F. Ferraro [filed Aug. 21, 2007].) In light of the ensuing decision, the motion is moot.

# ANALYSIS

## *1.     Legal Standard*

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the court may grant summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c) (2007); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986); *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994). The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works*, 36 F.3d at 1518 (citing *Celotex*, 477 U.S. at 325). The nonmoving party may not rest solely on the allegations in the pleadings, but must instead designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see* Fed. R. Civ. P. 56(e) (2007). A fact in dispute is "material" if it might affect the outcome of the suit under the governing law; the dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997) (citing *Anderson*, 477 U.S. at 248). The court may consider only admissible evidence when ruling on a summary judgment motion. *See World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985). The factual record and reasonable inferences therefrom are viewed

in the light most favorable to the party opposing summary judgment. *Byers v. City of Albuquerque*, 150 F.3d 1271, 1274 (10th Cir. 1998) (citing *Concrete Works*, 36 F.3d at 1517).

## 2. *Evaluation of Claims*

### a. *Gender Discrimination*

Construing her allegations generously, Plaintiff alleges three distinct bases for her gender discrimination claim: discriminatory discharge, hostile work environment, and retaliation. (*See* Pl.'s Resp.) As set forth below, no iteration of Plaintiff's gender discrimination claim is worthy of trial.

#### i. *Discriminatory Discharge*

Defendant argues that, in light of the fact that Plaintiff's only evidence of discriminatory animus is one "somewhat" discriminatory comment, Plaintiff cannot establish that Defendant terminated her under circumstances that give rise to an inference of discrimination. (Def.'s Br. at 46–48.) In response, Plaintiff merely alleges that "Tyler Gunn had expressed a preference and intent for an all-male management team under him, and accomplished this after terminating [Plaintiff] by moving a male, who had been guilty of 'grazing' but not fired, into [Plaintiff's] job . . . ." (Pl.'s Resp. at 61–62.)

To establish a *prima facie* wrongful termination claim under Title VII, a plaintiff must show that: "(i) she belongs to a protected class; (ii) she was qualified and satisfactorily performing her job; and (iii) she was terminated under circumstances giving rise to an inference of discrimination." *Martin v. Nannies & Newborns, Inc.*, 3 F.3d 1410, 1417 (10th Cir. 1993). "The critical *prima facie* inquiry in all cases is whether the plaintiff has demonstrated that the adverse

employment action occurred under circumstances which give rise to an inference of unlawful discrimination." *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1227 (10th Cir. 2000) (internal quotation marks omitted).

Even accepting as true Plaintiff's contention that Mr. Gunn, Ms. Gonzales, and Ms. Sokol were all lying when they said that Plaintiff confessed to stealing a pregnancy test, Plaintiff's theory *still* strains credulity.  Based upon *one* isolated, "somewhat" discriminatory comment made by Mr. Gunn, Plaintiff infers that Mr. Gunn, *Ms.* Gonzales, and *Ms.* Sokol had all joined together in a conspiracy to fire Plaintiff because she is female.  (Def.'s Br., Ex. D1 at 53–54, 72–74 [Pl. Dep.].) Plaintiff's wild inference clashes not only with her admission that it was Ms. Gonzales who *promoted* Plaintiff to a senior management position, (*id.*, Ex. D1 at 73–74 [Pl. Dep.]), but also with Plaintiff's own admitted lack of any factual basis supporting her "belief" that Ms. Sokol or Ms. Gonzales acted against her because she is female:

> Q:    Do you have any reason to believe that Ms. Sokol — any evidence, anything to suggest that Ms. Sokol would discriminate against a female manager on the basis of gender?
> A:    I don't recall having — I — not at this time.
> *      *      *
> Q:    And you're saying that even after [promoting you], [Ms. Gonzales] took part in a conspiracy to get you out of [M]erchandise [M]anager because you're a woman?
> A:    Yeah.
> Q:    And do you have anything other than your belief or opinion to prove that?
> A:    No, just from the conversation I had with Tyler [Gunn].

(*Id.*, Ex. D1 at 57, 74 [Pl. Dep.].)  Based upon the admitted absence of any plausible factual basis supporting Plaintiff's "belief" that she was the victim of a gender-based conspiracy, the court finds that no reasonable juror would join Plaintiff's unfounded, self-serving speculation.  *See Branson*

*v. Price River Coal Co.*, 853 F.2d 768, 772 (10th Cir. 1988) (stating that "mere conjecture . . . is an insufficient basis for denial of summary judgment"); *see also Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 531 (10th Cir 1994) (stating isolated or ambiguous comments are insufficient to support a finding of age discrimination).

Plaintiff asserts that she was treated differently than Mr. Boyd because she was fired for grazing and he was not. (Pl.'s Resp. at 21, 60.) If it were true that Mr. Boyd was guilty of grazing, such evidence might support a reasonable inference of disparate treatment. *See Kendrick*, 220 F.3d at 1227. Unfortunately, Plaintiff's argument concerning Mr. Boyd stands at a familiar distance from the factual record. Plaintiff contends that "[Ms.] Gonzales gave [Mr.] Boyd . . . only a verbal warning (apparently to keep it out of written documents being produced) for violation of the grazing policy." (Pl.'s Resp. at 21 [citing Def.'s Br., Ex. D2 at 150–151 (Gonzales Dep.)].) Ms. Gonzales' deposition, however, relates a much more complete story:

> Q:    So when somebody takes food for an employee meeting, that's supposed
>       to be rung up immediately, is it not?
> A:    If the food is consumed before we open, it should be paid for immediately
>       upon opening.
> Q:    And it shouldn't wait [sixty] days, and it shouldn't require a complaint to
>       get that done either, should it?
> A:    Should not.
> Q:    Do you know whether that happened in [your store] in 2006?
> A:    I do.
> Q:    And was anybody disciplined for it?
> A:    There was verbal counseling given for that.
> Q:    Who got the verbal counseling?
> A:    George Boyd did.
> Q:    And that was not reduced to a written counseling notice at any time?
> A:    No, because the investigation was done, and it was *proven not to be for
>       personal consumption*. [The food] was for a meeting that [Mr. Boyd] had
>       that he kept the receipts for. He wasn't hiding anything. . . . He was just

> sloppy in not getting the follow-through work done. . . . [I]t's common
> practice to have food at a meeting.

(Def.'s Br., Ex. D2 at 150–51 [Gonzales Dep.] [emphasis added].) Failing to submit receipts for

inventory used for business purposes is hardly similar to taking store inventory for personal use.

No reasonable juror could draw an inference of discriminatory animus from this scant evidence.

### ii. *Hostile Work Environment*

In a footnote, Plaintiff suggests that she was subjected to a hostile work environment

because she was "subject[ed] to continual foul language." (Pl.'s Resp. at 61–62 n.8.) Plaintiff

failed to allege a hostile work environment in her Equal Employment Opportunity Commission

("EEOC") charge or in her complaint. (*See* Def.'s Br., Ex. 25 [EEOC Charge]; Notice of

Removal, Ex. A ¶¶ 48–51 [Compl.].)

The filing of a discrimination charge with either a state or federal administrative agency is

a jurisdictional prerequisite to filing a Title VII discrimination suit in federal court. *Seymore v.

Shawver & Sons, Inc.*, 111 F.3d 794, 799 (10th Cir. 1997). This is so because the charge tells the

agency what to investigate, provides it with the opportunity to conciliate the claim, and gives the

charged party notice of the alleged violation. *Id.*; *see also Jones v. Sumser Ret. Vill.*, 209 F.3d

851, 853 (6th Cir. 2000) ("[T]he facts alleged in the charge must be sufficiently related to the

claim such that those facts would prompt an investigation of the claim."). "Thus, a plaintiff

normally may not bring a Title VII action based upon claims that were not part of a timely-filed

EEOC charge for which the plaintiff has received a right-to-sue letter." *Simms v. Okla. ex rel.

Dep't of Mental Health*, 165 F.3d 1321, 1326 (10th Cir. 1999) (citations omitted).

Plaintiff's EEOC charge makes no allegations that even begin to suggest she endured a hostile work environment.  (*See* Def.'s Br., Ex. 25 [EEOC Charge].)  Instead, Plaintiff exclusively alleged that she was fired for being female and was replaced by a preferred male employee.  (*Id.*)  The charge cannot be read reasonably to suggest that Plaintiff sought to assert a claim for hostile work environment discrimination.  (*See id.*)  To the extent Plaintiff attempts to assert such a claim now, the court finds that she failed to exhaust her administrative remedies for the claim.  *Seymore*, 111 F.3d at 799.  Thus, this court lacks jurisdiction to consider it.  *Id.*

Even if this court has jurisdiction over the claim, the claim fails as a matter of law.  It appears that this claim, which is unsupported by any record citation, is connected to Plaintiff's deposition testimony that she had, "on numerous — on a couple of occasions," complained to her supervisors about the general use of profanity by store employees.  (*See* Def.'s Br., Ex. D1 at 172–75 [Pl. Dep.].)  Even construed generously, such evidence could not withstand a *prima facie* attack, as Plaintiff has failed to make a showing that she was subjected to profanity because of her gender — let alone that the profanity was so severe and pervasive as to alter a term, condition, or privilege of Plaintiff's employment.  *See Dick v. Phone Directories Co., Inc.*, 397 F.3d 1256, 1262 (10th Cir. 2005).

### iii.    Retaliation

Plaintiff claims she was retaliated against in violation of Title VII: (1) by upper management for being a "whistleblower;" (2) by Mses. Nicastro and Edwards for being their boss; (3) by Ms. Gonzales "for the possibility of [Plaintiff] knowing about the drug paraphernalia in her car;" (4) by Mr. Gunn because "he knew he said something to [Plaintiff] that was inappropriate

about discriminating against being [sic] — having a man in the position or not;" and (5) because "[s]he refused a reassignment by rotation, which would have allowed a male to fill her job, and eventually was terminated by [Defendant]." (Pl.'s Resp. at 62; Def.'s Br., Ex. D1 at 106, 127–28 [Pl. Dep.].) As with her hostile work environment claim, Plaintiff failed to state — let alone intimate — that she suffered retaliation in either her EEOC charge or the complaint. (*See id.*, Ex. 25 [EEOC Charge]; Notice of Removal, Ex. A ¶¶ 48–51 [Compl.].) Thus, Plaintiff's retaliation claim must be dismissed for lack of jurisdiction.

Even if this court has jurisdiction over the claim, the claim fails as a matter of law. To establish a *prima facie* case of retaliation in violation of Title VII, a plaintiff must come forward with evidence suggesting, *inter alia*, that she engaged in protected *opposition to discrimination*. 42 U.S.C. § 2000e–3(a); *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1202 (10th Cir. 2006). Plaintiff's evidence falls far short of such a showing.

The court begins with Plaintiff's allegation that she was retaliated against for being a "whistleblower." Plaintiff's own testimony undermines this assertion:

> Q:  So you blowing the whistle would be limited to calling yourself a whistle blower because you wrote up employees for absenteeism and other offenses, and upper management wanted you to give them another chance; is that right?
> A:  Basically.

(Def.'s Br., Ex. D1 at 106 [Pl. Dep.].) Such conduct does not constitute opposition to unlawful discrimination. *See* 42 U.S.C. § 2000e–3(a); *Argo*, 452 F.3d at 1202.

Plaintiff also appears to allege that she was retaliated against by subordinates for being their boss. Plaintiff testified:

> Q:     Tell me what the basis is for your retaliation claim in this case. How do you think you were retaliated against by [Defendant]?
>
> A:     I was — I feel I was retaliated against by two employees in general. I mean, the two that have accused me of this, Lori Edwards and Melissa Nicastro. I was their immediate supervisor or manager, and I wrote their yearly reviews. I directed them on daily tasks to do. And there was considerable insubordination, mostly on Melissa's part and somewhat on Lori's part.
>
> Q:     And so you think Melissa Nicastro and Lori Edwards, your subordinates . . . retaliated against you?
>
> A:     Absolutely.

(Def.'s Br., Ex. D1 at 127 [Pl. Dep.].) Looking past the mystifying implicit contention that an employer could be held liable for retaliation by subordinates against their superior, it is obvious that Plaintiff's assertions *vis-à-vis* Mses. Edwards and Nicastro have nothing to do with any past opposition to discrimination. *See* 42 U.S.C. § 2000e–3(a); *Argo*, 452 F.3d at 1202.

Plaintiff asserts that Ms. Gonzales retaliated against her "for the *possibility* of [Plaintiff] knowing about the drug paraphernalia in [Ms. Gonzales'] car." (Def.'s Br., Ex. D1 at 128 [Pl. Dep.] [emphasis added].) Even if Plaintiff had asserted that Ms. Gonzales retaliated against her because Ms. Gonzales *actually knew* Plaintiff was aware Ms. Gonzales possessed drug paraphernalia, that would still have nothing whatsoever to do with past opposition to unlawful discrimination. *See* 42 U.S.C. § 2000e–3(a); *Argo*, 452 F.3d at 1202.

Plaintiff comes closest to — but still falls markedly short of — making a colorable allegation of retaliation when she asserts Mr. Gunn retaliated against her because "he knew he said something to [Plaintiff] that was inappropriate about discriminating against being [sic] — having a man in the position or not." (Def.'s Br., Ex. D1 at 128 [Pl. Dep.].) This allegation does not suggest that Mr. Gunn retaliated against Plaintiff because she *opposed* his

-14-

"somewhat" discriminatory remark. Plaintiff comes forward with no evidence suggesting that she took any action in response to Mr. Gunn's statement — let alone any action in *opposition* to the statement. (*See* Pl.'s Resp.) Plaintiff merely suggests that Mr. Gunn acted against her because he had said something discriminatory to her in the past. Such conduct is not actionable retaliation. *See* 42 U.S.C. § 2000e–3(a); *Argo*, 452 F.3d at 1202.

In her brief, Plaintiff alleges that she has established a *prima facie* case of retaliation because "[s]he refused a reassignment by rotation, which would have allowed a male to fill her job, and eventually was terminated by [Defendant]." (Pl.'s Resp. at 62.) Setting aside this statement's questionable coherence, the court notes that it is wholly unsupported by any record citation whatsoever. (*See id.*) Such "unsupported conclusory allegations do not create a genuine issue of fact." *Annett v. Univ. of Kan.*, 371 F.3d 1233, 1237 (10th Cir. 2004). Moreover, the record reflects that it was Defendant's policy to rotate *all* managers at Plaintiff's level through various senior positions so that they could get a breadth of managerial experience. (Def.'s Br., Ex. D1 at 60–62 [Pl. Dep.].) Thus, to the extent Plaintiff ever opposed "reassignment by rotation," such opposition could hardly be said to have challenged discrimination. In light of all of the foregoing, Defendant is entitled to summary judgment on every specious iteration of Plaintiff's frivolous retaliation claim.

***b.***      ***State Law Claims***

     ***i.***      ***Breach of Contract for Employment, Breach of Implied Contract for Employment, and Promissory Estoppel***

Plaintiff first alleges she "was denied access to [Defendant's] Open Door Policy," which is contained in Defendant's "Employee Agreement." (*See* Pl.'s Resp. at 53 [citing Pl.'s Resp., Resp. to SOF ¶ 121].) The policy encourages prompt settlement of "work-related disagreements" and instructs employees to contact a supervisor, location manager, regional vice president, human resources department, or Defendant's office of the ombudsman if such disagreements arise. (Def.'s Br., Ex. 2 at 11–12 [Employee Agreement].) The policy states that those contacted will address concerns promptly. (*Id.*)

In support of her claim for breach of the policy, Plaintiff points to the fact that, on the day she was terminated, she called "either Bob Hicok or Dennis Zuck [sic]," but "the secretary would not put me through to one of them. I can't remember which one I called. I knew they were higher up above Ron Vachris." (*Id.*, Ex. D1 at 115 [Pl. Dep.].) Plaintiff asserts that the person she called did not call back. (*Id.*) Plaintiff neglects to identify what positions Messrs. Hicok and "Zuck" held,[3] let alone explain why she did not contact them on the day she was suspended. (*See* Pl.'s Resp. at 53.) Moreover, Plaintiff cannot dispute that she had access to her supervisors (Mr. Gunn and Ms. Sokol), her location manager (Ms. Gonzales), and her regional vice president (Mr. Vachris) through the course of her suspension. (*See id.*, Resp. to SOF ¶¶ 60, 111.) Thus, to the

---

[3]Bob Hicok is a Senior Vice President and Dennis Zook is an Executive Vice President. (Def.'s Br., Ex. D3 at 10 [Vachris Dep.].)

extent this policy could be said to support a contract claim, Plaintiff failed to create an issue of fact as to breach.

Beyond her allegations relating to the "Open Door Policy," Plaintiff fails to point to any other contractual obligation. (*See id.* at 50–60.) Instead, Plaintiff vaguely asserts that Defendant breached the employment contract contained in Defendant's "employee policy manual" by failing to employ appropriate disciplinary and termination procedures. (*Id.* at 50–57.) Throughout the course of her argument, Plaintiff neglects to cite, quote, or discuss any particular aspect of the "employee policy manual" upon which she purports to premise this claim. (*See id.*; *see also* Notice of Removal, Ex. A ¶¶ 24–30 [Compl.] [generally alleging Defendant breached its "Employee Agreement"].) Plaintiff does, however, once generally cite the *entire* "employee manual," which by the court's count, spans no fewer than eighty-seven pages. (*See* Pl.'s Resp. at 53.) This general citation is insufficient to pin Plaintiff's ephemeral allegations of breach to competent evidence suggesting the existence of a contractual obligation. *See W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992) (setting forth the elements for a claim for breach of contract, which include existence of a contract and breach).

"Whether an alleged promise is claimed to be part of an express contract or is asserted as the basis for the application of promissory estoppel, it must be sufficiently specific so that the judiciary can understand the obligation assumed and enforce the promise according to its terms." *Soderlun v. Pub. Serv. Co.*, 944 P.2d 616, 620 (Colo. Ct. App. 1997). Here, besides her reference to the "Open Door Policy," Plaintiff has not pointed to *any* promise, specific or otherwise. If Plaintiff cannot be bothered to point to a specific contractual provision that

Defendant might have breached, this court has no obligation to cross-reference the record against

Defendant's Employment Agreement in a search for a broken promise that might save Plaintiff's

claim.[4]  *See Annett*, 371 F.3d at 1237 (stating unsupported, conclusory allegations cannot survive

summary judgment); *DeSilva v. DiLeonardi*, 181 F.3d 865, 867 (7th Cir. 1999) ("A brief must

make all arguments accessible to the judges, rather than ask them to play archaeologist with the

record."); *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs,

hunting for truffles buried in briefs."); *see also Espinoza v. Coca-Cola Enters., Inc.*, 167 F. App'x

743, 746 (10th Cir. 2006) ("[W]here the nonmovant failed to support his case with adequate

specificity, [the Tenth Circuit] will not fault the court for not searching the record on its own to

make his case for him . . . .").  Plaintiff's failure to designate "*specific facts* showing that there is a

---

[4]In its perusal of the Employee Agreement, the court noted only one provision to which
Plaintiff *might* be referring:

> We reserve the right to discharge you for sufficient and proper cause as defined by
> [Defendant]. This includes, but is not limited to, the "Causes for Termination"
> listed in Section 11.2. . . .  Prior to terminating the employment of an individual
> who has been employed five or more years, the circumstances must be reviewed by
> an Executive Vice President or above [sic].

(Def.'s Br., Ex. 2 at 26 [Employee Agreement].)  In turn, Section 11.2 provides that an employee
may be terminated for "grazing."  (*Id.*, Ex. 2 at 67 [Employee Agreement].)  Plaintiff has come
forward with no evidence undermining Mr. Vachris' testimony that he met with Executive Vice
President Dennis Zook to review the basis for Plaintiff's termination.  (*Id.*, Ex. D3 at 152–53
[Vachris Dep.].)  To the extent Plaintiff contends Defendant breached the policy buried at the
155th page of her single summary judgment exhibit, (*see* Pl.'s Resp. at 55), the court notes that
said policy, which is *not* part of Defendant's Employee Agreement, is irrelevant on its face: it is
titled "Investigating a Complaint of Harassment [or] Discrimination."  (*Id.*, Ex. A [Dep. Ex. 56]
[Discrim. Investigation Policy].)  Moreover, even assuming (1) the policy could apply to an
investigation of grazing, and (2) Defendant had represented the policy would be so applied, the
court notes that the steps of the policy are explicitly stated to be *discretionary*.  (*See id.*
[providing "suggested steps" for investigating a complaint of harassment and noting the steps to
be "general guidelines"].)

genuine issue for trial" forces the conclusion that summary judgment is warranted on Plaintiff's contract claims. *Celotex*, 477 U.S. at 324 (emphasis added).

To the extent Plaintiff could be said to argue Defendant failed to show adequate cause for her termination, (*compare* Def.'s Br. at 35, *with* Pl.'s Resp. at 51–57), such an argument is wholly undermined by Plaintiff's testimony. Plaintiff represented that, after speaking to Mr. Vachris by phone, she understood that Mr. Vachris believed Mr. Gunn, Ms. Sokol, and Ms. Gonzales when they reported that Plaintiff had admitted to grazing. (Def.'s Br., Ex. D1 at 122–24 [Pl. Dep.].) Plaintiff further admitted that, on the very day she was suspended, she refused to write formal statement telling her side of the story. (*Id.*, Ex. D1 at 107–08 [Pl. Dep.].) That Plaintiff later faxed a statement to Mr. Vachris tersely proclaiming her innocence does nothing to change this. (*See id.*, Ex. 20 [2/9/07 Fax from Pl. to Mr. Vachris].) Once it was believed that Plaintiff, a senior manager, had confessed to a terminable offense in the presence of three other senior managers and once Plaintiff refused to provide a statement suggesting a factual basis for believing that her confession was mistaken, the cause for termination was overwhelming. No reasonable mind could conclude that Defendant lacked good cause for terminating Plaintiff. *See Singh v. Mortensun*, 30 P.3d 853, 858 (Colo. Ct. App. 2001) ("'Good cause' to terminate employment is a reason that is real and not imaginary, substantial and not trifling, reasonable and not whimsical or capricious, as applied to the average man or woman, and not to the supersensitive.").

The court now turns to Plaintiff's promissory estoppel claim. Although Plaintiff alleged in her complaint that Defendant promised to treat her "equitably and fairly," Plaintiff has categorically failed to set forth when or how Defendant actually made such a promise, whether or

how she relied upon the promise, or how application of the doctrine would prevent injustice. *See*

*Seeley v. Bd. of County Comm'rs*, 771 P.2d 21, 23 (Colo. Ct. App. 1989) ("[P]romissory

estoppel grants to the employee only the benefits of the termination procedures as prescribed by

the employment manual, provided that the employee establishes his detrimental reliance upon the

terms of the manual and further that the doctrine is necessary to prevent an injustice."). Rather, in

her response to Defendant's motion for summary judgment, Plaintiff abandons this version of her

claim and instead attempts to amend her claim to reflect an entirely different alleged promise: that

she would "receive the benefits of the termination procedures encompassed in the Employee

Agreement . . . ." (Pl.'s Resp. at 59.)

     As Plaintiff abandoned in her response brief any mention of her initial claim based on a

promise for "fair and equitable" treatment, this court may treat that version of Plaintiff's claim as

confessed. *See Guardian Title Agency, LLC v. Matrix Capital Bank*, 141 F. Supp. 2d 1277, 1283

n.2 (D. Colo. 2001). Even assuming, *arguendo*, that Plaintiff had not abandoned her claim based

on a promise for "fair and equitable" treatment and, instead, had gone so far as to present

evidence suggesting such a promise was actually made, this court has nevertheless previously

held:

> Promises of fair and ethical treatment . . . are not sufficiently specific to express an
> obligation or commitment [d]efendant intended to assume. At best, these vague
> statements amount to general descriptions of [d]efendant's policies, which are not
> enforceable under either contract or promissory estoppel theory.

*Murphy v. TXI Operations, LP*, 04–cv–02053–EWN, 2006 WL 827308, at *19 (D. Colo. Mar.

29, 2006); *accord George v. Ute Water Conservancy Dist.*, 950 P.2d 1195, 1199 (Colo. Ct. App.

1997); *Soderlun*, *supra*.  Consequently, to the extent Defendant ever promised Plaintiff "fair and equitable" treatment, such a promise is insufficient to support a claim for promissory estoppel.

Turning to the new version of Plaintiff's promissory estoppel claim asserted for the first time in her summary judgement response, the court rejects Plaintiff's implicit motion to amend her claim as both tardy and abusive.  *See Breaux v. Am. Family Mut. Ins. Co.*, 04–cv–00191–EWN–MJW, 2006 WL 2548260, at *16–17  (D. Colo. Sept. 1, 2006) (denying as untimely and prejudicial an implicit motion to amend complaint suggested by summary judgment argument).

Even if the amendment were allowed, this revision of Plaintiff's promissory estoppel claim would still fail on the same grounds as her contract claim: although Plaintiff alleges that Defendant's investigation into the allegations made against her was a "sham," she fails to demonstrate how such a "sham" investigation constitutes a breach of any promise made by Defendant.  (*See* Pl.'s Resp. at 59–60.)  Absent a broken promise, Plaintiff has no claim for promissory estoppel.[5]  *See Jones v. Denver Pub. Schs.*, 427 F.3d 1315, 1325 (10th Cir. 2005) (requiring, *inter alia*, a promise to have gone unfulfilled for a promissory estoppel claim to go forward).

_____

[5]Further, Plaintiff fails to support this theory with any evidence that she detrimentally relied on any policy requiring a fuller investigation than that which she received.  *See Seeley*, *supra*.  Instead, as noted above, Plaintiff admits that prior to her termination, she ceased participating in Defendant's investigation, retained counsel, and decided to sue.  (Def.'s Br., Ex. D1 at 107–09, 227–28 [Pl. Dep.], Ex. 20 [2/9/07 Fax from Pl. to Mr. Vachris].)

Plaintiff does *appear* to come tantalizingly close to suggesting a connection between her claim and a promise made by Defendant when, in a questionably coherent sentence, Plaintiff: (1) vaguely mentions "[Defendant's] stated policies that were employed and acknowledged to be in play here;" and then (2) promisingly cites to Ms. Gonzales' deposition, giving rise to the inference that Ms. Gonzales had acknowledged a policy relevant to Plaintiff's claim. (Pl.'s Resp. at 59 [citing Def.'s Br., Ex. D2 at 47, 131 (Gonzales Dep.)].) Unfortunately, the cited pages of Ms. Gonzales' deposition fail to bear this inference out — instead, Ms. Gonzales merely: (1) refers to Defendant's "mission, which has always been to take care of [its] employees;" and (2) authenticates various documents. (Def.'s Br., Ex. D2 at 47, 131 [Gonzales Dep.].) This is not evidence upon which a viable promissory estoppel claim can be premised. Based on their myriad infirmities, Plaintiff's contractual and quasi-contractual claims fail as a matter of law.

### iii. *Defamation*

When questioned about her defamation claim, Plaintiff testified as follows:

Q:    Do you have any reason to believe that [Defendant's] management told people after your termination about the fact that you had been terminated for grazing and theft?

A:    I believe that Lori Edwards discussed it with — obviously she discussed it with Kathy Kroll. [Ms. Kroll is] a manager for [Defendant]. I — I don't know of anybody else discussing it, no, with anybody —

\*    \*    \*

Q:    Other than Lori Edwards talking to Kathy Kroll in January of [20]07, is there anyone else you're aware of in [Defendant's] management who talked to others about your termination for grazing?

A:    I don't think so.

\*    \*    \*

Q:    And [Defendant] certainly didn't tell your potential employer, Lane Bryant, that you were terminated for theft and grazing, did they?

A:    No.

      \*      \*      \*

Q:      So do you have any knowledge that [Defendant] may have told any other prospective employer that you were terminated for theft and grazing?

A:      No.

(*Id.*, Ex. D1 at 201–02, 204–05 [Pl. Dep.].)  Ms. Kroll is the manager of the optical department at the store where Plaintiff worked.  (*Id.*, Ex. D1 at 42 [Pl. Dep.].)  Plaintiff and Ms. Kroll have been in touch with one another since Plaintiff's termination.  (*Id.*)  Plaintiff testified that on January 10, 2007, Ms. Kroll told her that Ms. Edwards had approached her and "said that she hadn't been sleeping and that she wanted to — or [sic] get in touch with [Plaintiff's] attorney."  (*Id.*, Ex. D1 at 76 [Pl. Dep.].)

A number of conclusions must be drawn from Plaintiff's testimony.  First, Plaintiff has no knowledge of any defamatory remarks made by Ms. Edwards.  Second, even if Ms. Edwards' remarks to Ms. Kroll could be construed as defamation, such remarks were not made until *after* Plaintiff filed her lawsuit alleging defamation in *October 2006*.  (*See* Notice of Removal, Ex. A [Compl.].)  Of course, Plaintiff has not sought leave to amend her complaint to include events postdating it — and this court would not have granted it if she had.  *See Breaux*, *supra*.  Finally, Plaintiff admits that she has no knowledge of any other purportedly defamatory statements made by *anyone*.  Accordingly, Plaintiff's own testimony reveals that her claim for defamation is familiarly based on belief, rather than competent evidence.  Summary judgment is thus warranted.

If summary judgment were not warranted on the above-stated grounds, it would still be granted based on the fact that, as Defendant points out, Plaintiff's argument concerning defamation is devoid of "*any* citation to *any* record evidence."  (Def.'s Reply at 78 [emphases in

original]; *see* Pl.'s Resp. at 64–66.)  As has been stated repeatedly in this order, it is not this court's duty to go hunting through briefs and exhibits for evidence to give clout to Plaintiff's unsupported allegations.  *See Annett*, 371 F.3d at 1237; *DiLeonardi*, 181 F.3d at 867; *Dunkel*, 927 F.2d at 956; *Espinoza*, 167 F. App'x at 746.  Summary judgment is not a joke, but Plaintiff's counsel have treated it like one.  Defendant gets the last laugh.

### 3.    *Conclusion*

Based on the foregoing it is therefore ORDERED that:

1.    DEFENDANT's motion (#45) for summary judgment is GRANTED.

2.    The clerk shall forthwith enter judgment in favor of Defendant and against Plaintiff, dismissing Plaintiff's claims with prejudice.  Defendant may have its costs by filing a bill of costs within eleven days of the date of this order.

Dated this 30th day of November, 2007

BY THE COURT:


s/ Edward W. Nottingham
EDWARD W. NOTTINGHAM
Chief United States District Judge